1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

MICHAEL CHARLES MEISLER,   )   3:12-cv-00487-MMD-WGC

9                           )

Plaintiff,         )   **REPORT AND RECOMMENDATION**

10                        )   **OF U.S. MAGISTRATE JUDGE**

vs.           )

11                        )

NADINE CHRZANOWSKI, et. al.   )

12                        )

Defendants.     )

13 _____ )

14
15
16
17
18
19
20

     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. Before the court is Plaintiff's pro se Complaint (Doc. # 4) [1] and Motion to Clarify the Minute Order of November 26, 2012 and for Other Relief (Doc. # 8). Plaintiff's address of record is listed as the Douglas County Jail and the relief sought includes redress from governmental entities and their employees. As such, the court issues this Report and Recommendation after screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A.

**I. SCREENING**

**A. STANDARD**

21
22
23
24
25
26
27
28

     28 U.S.C. § 1915A provides: "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from

_____

[1]Refers to court's docket number.

1   a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). "'[P]risoner' means any

2   person incarcerated or detained in any facility who is accused of, convicted of, sentenced for,

3   or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole,

4   probation, pretrial release, or diversionary program."

5        Dismissal of a complaint for failure to state a claim upon which relief may be granted

6   is provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same

7   standard under Section 1915A when reviewing the adequacy of a complaint.

8        "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on

9   a question of law." *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983)

10   (citation omitted). Under Federal Rule of Civil Procedure 8(a), "a claim for relief must

11   contain…a short and plain statement of the claim showing that the pleader is entitled to

12   relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a

13   plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell*

14   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662,

15   678 (2009).

16        The complaint need not contain detailed factual allegations, but it must contain more

17   than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555

18   (citation omitted); *Iqbal*, 556 U.S. at 678. The Rule 8(a) notice pleading standard requires the

19   plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which

20   it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim

21   has facial plausibility when the plaintiff pleads factual content that allows the court to draw

22   the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

23   U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant

24   has acted unlawfully." *Id.* (citation omitted). "Determining whether a complaint states a

25   plausible claim for relief" is "a context-specific task that requires the reviewing court to draw

26   on its judicial experience and common sense." *Id.* at 679 (citation omitted). Allegations can

27   be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged.

28   *Id.* at 682.

1    In reviewing a complaint under this standard, the court must accept as true the
2    allegations of the complaint in question, *Hospital Building Co. v. Trustees of Rex Hospital*,
3    425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and
4    resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).
5    However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare
6    recitals of the elements of a cause of action, supported by mere conclusory statements, do not
7    suffice." *Id.* (citation omitted).  "While legal conclusions can provide the framework for a
8    complaint, they must be supported by factual allegations." *Id.* at 679.

9    Allegations in pro se complaints, "'however inartfully pleaded'  are held 'to less
10   stringent standards than formal pleadings drafted by lawyers[,]'" and must be liberally
11   construed. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519,
12   520 (1972) (*per curiam*)); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation
13   omitted). A district court should not dismiss a pro se complaint without leave to amend unless
14   "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."
15   *Schucker v.  Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir.  1988) (per curiam) (internal
16   quotation marks omitted).

17   As a general rule, the court may not consider any material beyond the pleadings in
18   ruling on a motion to dismiss for failure to state a claim without converting it into a motion
19   for summary judgment.  *See Lee v.  City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.  2001);
20   *see also Swartz v.  KPMG LLP*, 476 F.3d 756, 763 (9th Cir.  2007) (per curiam) (the court will
21   "consider only allegations contained in the pleadings, exhibits attached to the complaint, and
22   matters properly subject to judicial notice.").

23   **B. SUMMARY OF COMPLAINT**

24   **1. Summary of Claims Asserted**

25   Plaintiff brings this action pursuant to the United States Constitution and 42 U.S.C.
26   § 1983 related to alleged deprivations of his rights under the Fourth, Fifth, Sixth, Eighth, and
27   Fourteenth Amendments. (Doc. # 4.) He also asserts various state law claims. (*Id.*)
28   ///

**2. Defendants Named**

Plaintiff names the following as defendants: Nadine Chrzanowski (Douglas County Deputy Sheriff); M.A. Munoz (Douglas County Deputy Sheriff); Ted Duzan (Douglas County Deputy Sheriff); Dan Vidovich (a task force law enforcement officer/investigator of the State of Nevada Division of Criminal Investigations); Ron Pierini (Sheriff of Douglas County); Mark B. Jackson (District Attorney of Douglas County); Karen Dustman (Deputy District Attorney of Douglas County); Douglas County; Sprint-Nextel, Inc.; Janice Tebo (alleged victim of the criminal charge brought against Plaintiff and whom Plaintiff alleges provided Plaintiff's telephone number to the Douglas County Sheriff's Office); Laura J. Sperry (alleged to have been in a conspiracy with Janice Tebo to deny Plaintiff his rights). (Doc. # 4 at 1-6.)

**3. Summary of Allegations**

The allegations in the Complaint stem from Plaintiff's arrest and a charge of aggravated stalking that occurred on December 15, 2011. (Doc. # 4 at 6.)

**i. Arrest**

First, Plaintiff appears to attack his arrest pursuant to a warrant that he claims was not supported by probable cause. (*Id.* ¶¶ 16-17.) He references Nevada Revised Statute 179.045, and has attached the criminal complaint and affidavit filed by Deputy District Attorney Dustman as Exhibit 1 and the arrest warrant as Exhibit 2. (*Id.* ¶ 17, Ex. 1 at pp. 24-27, Ex. 2 at pp. 29-30.) As a result of his allegedly unlawful arrest and subsequent imprisonment, Plaintiff asserts that he sustained deprivations of his personal liberty and property, invasion of his privacy, and suffered from psychological harm, mental distress, humiliation, embarrassment, fear and defamation of his character and reputation, and was prevented from earning a living from December 15, 2011 to the present. (*Id.* at 10-11 ¶ 30.) This claim appears to be directed at defendants Douglas County Deputy District Attorney Dustman, Douglas County District Attorney Jackson (as Dustman's supervisor) and possibly Douglas County (on the basis of respondeat superior).

///

///

4

### ii. Cellular Location Data

Second, Plaintiff alleges that defendant Chrzanowski directed the Douglas County Sheriff's Department dispatch to contact defendant Sprint-Nextel, Inc., Plaintiff's cellular telephone provider, for the purpose of "pinging" his cellular telephone signal by triangulation to ascertain Plaintiff's location to enable defendants Chrzanowski, Munoz, Duzan, and Vidovich to effectuate Plaintiff's arrest. (Doc. # 4 at 6 ¶ 18.) Plaintiff asserts that this was done with out obtaining a warrant supported by probable cause or other court order, and resulted in the unconstitutional warrantless search and seizure of this information. (*Id.* at 7-8 ¶¶ 19-20.)

Plaintiff claims that defendants Jackson, Dustman, and Douglas County had notice of the propensities of defendants Chrzanowski, Munoz, Duzan, Vidovich, and Pierini to violate individual's civil rights, but took no steps to train, educate and monitor these defendants. (*Id.* at 8-9 ¶ 25.) Specifically, he claims that they failed to instruct them in the applicable provisions of federal law; failed to monitor existing and newly promulgated federal case law addressing their conduct or the applicable provisions of state law regarding tracking a cellular device signal on proper exercise of Nevada statutory law and criminal procedure including how to apply for and secure a valid search warrant. (*Id.*) He also asserts that defendants Douglas County, Jackson, and Dustman authorized and institutionalized practices and policies by failing to properly discipline and control its law enforcement employees; failing to take adequate precautions in hiring, promotion and retention of its personnel; failing to forward to the district attorney evidence of criminal acts committed by law enforcement; and failing to establish and/or assure the functioning of a system to deal with complaints of police misconduct or civil rights violations. (*Id.* at 9 ¶ 26.)

Plaintiff claims that defendant Sprint-Nextel, Inc. was a willing participant in the illegal "pinging" of his cellular telephone signal because it provided law enforcement with this information without the issuance of a validly issued search warrant or court order. (*Id.* at 11 ¶ 33, 15-20 ¶¶ 46-52, 54, 56, 59-64.)

Plaintiff implicates defendant Tebo by alleging that she was the alleged victim of the aggravated stalking charge, and she provided the name of Plaintiff's cellular telephone provider as well as Plaintiff's cellular telephone number to defendant Chrzanowski, knowing that it would lead to Plaintiff's unlawful arrest. (*Id.* at 11 ¶ 31, 12-13 ¶ 38.) Plaintiff goes on to allege that Tebo and defendant Sperry, both former girlfriends of Plaintiff, devised a plan that would lead to Plaintiff's incarceration "with the capable assistance of defendant Chrzanowski" and that they knew this would lead to the violation of Plaintiff's due process rights under the United States Constitution as well as under the Nevada Constitution and Nevada statutes. (*Id.* at 13-15 ¶¶ 39, 42, 44.)

Plaintiff claims that the aforementioned conduct violated his rights under the United States Constitution, including his right to be free from unreasonable searches and seizures under the Fourth Amendment, his right to due process under the Fourteenth Amendment, his right to equal protection of the laws under the Fourteenth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment. (*Id.*, 10 ¶ 29.) In addition, he claims that his rights under Article 1, sections 8(5) and 18 of the Nevada Constitution were violated. (*Id.* at 7 ¶ 19.)

Thus, this claim appears to be directed at defendants Chrzanowski, Munoz, Duzan, Vidovich, Pierini, Douglas County, Sprint-Nextel, Inc., Tebo and Sperry.

### iii. State Law Claims

In connection with the allegations described above, Plaintiff also asserts various state law claims including: false arrest, false imprisonment, malicious prosecution, abuse of process, conspiracy, negligence, breach of contract, and violations of Article I §§ 8(5) and 18 of the Nevada Constitution. (Doc. # 4 at 12-22 ¶¶ 36, 38, 39, 42, 46-52, 54-56, 59-64.)

### C. ANALYSIS

### 1. Federal Constitutional Claims

Plaintiff alleges that his federal constitutional rights were violated, including: (1) violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment; (2) the deprivation of life, liberty or property under the Fourteenth Amendment; (3) violation of his right to equal protection of the laws under the Fourteenth Amendment; and

1  (4) violation of his right to be free from cruel and unusual punishment under the Eighth

2  Amendment.

3      **a. Sprint-Nextel, Inc. is not a State Actor for Purposes of § 1983**

4      A plaintiff asserting a claim under § 1983 must "plead that (1) the defendants acting

5  under color of state law (2) deprived [the plaintiff] of rights secured by the Constitution or

6  federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citation

7  omitted).

8      Plaintiff alleges that Sprint-Nextel, Inc., is a Kansas corporation in the business of

9  providing wireless communication services as a cellular telephone services provider and

10  conducts business in the State of Nevada. (Doc. # 4 at 5 ¶ 13.) To the extent Plaintiff is

11  asserting federal constitutional claims pursuant to § 1983 against Sprint-Nextel, Inc., those

12  claims must be dismissed with prejudice as Sprint-Nextel, Inc. is not a state actor under

13  § 1983. *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("private parties are not

14  generally acting under color of state law").

15      In addition, and as will be set forth in detail below, for those state law claims asserted

16  against Sprint-Nextel, Inc., which survive screening under 12(b)(6), if the Stored

17  Communications Act (SCA), 18 U.S.C. § 2703, is determined to apply to prospective cellular

18  location data, and the data in question was obtained pursuant to the SCA, Plaintiff will not be

19  permitted to maintain these claims against Sprint-Nextel, Inc. The SCA mandates: "No cause

20  of action shall lie in any court against any provider of wire or electronic communication

21  service, its officers, employees, agents, or other specified persons for providing information,

22  facilities, or assistance in accordance with the terms of a court order, warrant, subpoena,

23  statutory authorization, or certification under this chapter." 18 U.S.C. § 2703(e). However, this

24  is not a determination the court can make on the face of the pleadings because Plaintiff

25  seemingly alleges that the information was obtained without *any* court order so the immunity

26  under the SCA would not apply. Therefore, to the extent the court finds that Plaintiff states

27  colorable state law claims against defendant Sprint-Nextel, Inc., they should proceed at this

28  juncture.

///

1

### b. Defendants Tebo and Sperry

2    Plaintiff implicates defendants Tebo and Sperry in his federal constitutional claims

3    brought pursuant to 42 U.S.C. § 1983, but these private individuals are not "state actors"

4    under § 1983. *See Price*, 939 F.2d at 707-08. However, when a private party conspires with

5    state officials to deprive a person of his or her constitutional rights, that party may be deemed

6    to be acting under state law. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980); *Crowe v.*

7    *County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d

8    423, 441 (9th Cir. 2002)) ("A private individual may be liable under § 1983 if she conspired

9    or entered joint action with a state actor."); *see also Cameron v. Craig*, No. 11-55927, 2013 WL

10   1607488, at * 8 (9th Cir. 2013) (quoting *Baldwin v. Palcer County*, 418 F.3d 966, 971 (9th Cir.

11   2005)) ("'Conspiracy to violate a citizen's rights under the Fourth Amendment…is evidently

12   as much a violation of an established constitutional right as the [underlying constitutional

13   violation] itself.'").

14   The court finds that Plaintiff has not adequately alleged a conspiracy to connect

15   defendants Tebo and Sperry, private individuals, with the state actor, Chrzanowski.

16   Plaintiff avers that defendant Tebo is an individual who was the alleged victim of

17   Plaintiff's criminal charge of aggravated stalking. (Doc. # 4 at 5 ¶ 14.) Plaintiff then claims that

18   defendant Sperry is an individual who conspired with defendant Tebo. (*Id.* ¶ 15.) While

19   Plaintiff alleges a line of communication between defendants Tebo and Sperry which resulted

20   in their devising a plan that would result in Plaintiff being convicted and incarcerated, the only

21   allegation that connects these defendants and defendant Chrzanowski is that defendant Tebo

22   provided the name of Plaintiff's cellular telephone provider and his telephone number to

23   defendant Chrzanowski. (Doc. # 4 at 11 ¶ 31.) This does not sufficiently allege a conspiracy

24   under § 1983 which requires factual allegations that show an agreement or meeting of the

25   minds to violate constitutional rights. *See United Steelworkers of Am. v. Phelps Dodge Corp.*,

26   865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc).

27

28

1   The court acknowledges that Plaintiff alleges some sort of meeting of the minds

2   between Tebo and Sperry, but there is no such allegation with respect to Chrzanowski; instead,

3   Plaintiff alleges that he also violated Plaintiff's rights by instructing Sprint-Nextel, Inc. to

4   provide the cellular location data. While Plaintiff inserts an allegation that the plan of Tebo

5   and Sperry was communicated to Chrzanowski and he "approved of it" and that they entered

6   into such an agreement with Chrzanowski's "tacit approval" (Doc. # 4 at 14 ¶ 42, 15 ¶ 44), these

7   are conclusory allegations. "While legal conclusions can provide the framework for a

8   complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. Notably

9   lacking from Plaintiff's pleading are any specific facts that state exactly what was

10   communicated to Chrzanowski regarding the agreement or plan devised by Tebo and Sperry

11   to violate Plaintiff's constitutional rights and how he approved of it.

12   For the foregoing reasons, defendants Tebo and Sperry should be dismissed from the

13   federal claims. Because it is possible Plaintiff can cure the deficiency in this claim with the

14   allegation of other facts, the dismissal should be without prejudice to the extent the court

15   determines that Plaintiff's underlying Fourth Amendment claim related to obtaining Plaintiff's

16   cellular location data can proceed.

17   ### c. Fourth Amendment

18   #### 1. Arrest

19   First, Plaintiff asserts that his Fourth Amendment rights were violated because the

20   warrant for his arrest was not supported by probable cause. The court finds that this claim is

21   belied by the exhibits attached to Plaintiff's Complaint; therefore, it should be dismissed with

22   prejudice. (*See* Doc. # 4 at 32.)

23   #### i. Standard

24   The Fourth Amendment provides:

25   The right of the people to be secure in their persons, houses, papers, and effects,
     against unreasonable searches and seizures, shall not be violated, and no

26   warrants shall issue, but upon probable cause, supported by oath or affirmation,
     and particularly describing the place to be searched, and the persons or things

27   to be seized.

28

9

U.S. Const. amend IV. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-65 (9th Cir. 2001) (citation omitted); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)(citation omitted) ("An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983."). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citation omitted). The standard for probable cause is an objective one- "[t]he arresting officers' subjective intention...is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

### ii. Factual background

Plaintiff was arrested for allegedly having committed the crime of aggravated stalking, which is defined in Nevada Revised Statute 200.575. (*See* Doc. # 4 at 6 ¶ 16.) This statute provides, in pertinent part:

> 1. A person who, without lawful authority, willfully or maliciously engages in a course of conduct that would cause a reasonable person to feel terrorized, frightened, intimidated, harassed or fearful for the immediate safety of a family or household member, and that actually causes the victim to feel terrorized, frightened, intimidated, harassed or fearful for the immediate safety of a family or household member, commits the crime of stalking...
> 2. A person who commits the crime of stalking and in conjunction therewith threatens the person with the intent to cause the person to be placed in reasonable fear of death or substantial bodily harm commits the crime of aggravated stalking...

Nev. Rev. Stat. 200.575 (1), (2).

Plaintiff has attached the criminal complaint to his civil Complaint. (*See* Doc. # 4 at 24-25.) It contains the following statement, in pertinent part:

> The defendant, Michael Charles Meisler, on or about November 15, 2011 through December 10, 2011, and prior to the filing of this complaint, in the County of Douglas, State of Nevada, "did willfully, or maliciously and without lawful authority engage in a course of conduct that would cause a reasonable person to feel terrorized, frightened, intimidated or harassed and that actually caused the victim to feel terrorized, frightened, intimidated or harassed and in

conjunction therewith did threaten the person with the intent to cause her to be placed in reasonable fear of death or substantial bodily harm, to wit: he sent multiple letters and/or text messages to Janice Tebo and/or left written messages inside her home or taped to her garage door, stating 'va fa enculo' (go to the devil); and/or 'you deserve everything coming to you as a result of your callousness'; and/or 'you deserve every bad and horrific event that transpires'; and/or 'a prayer to a priest now would be untimely as it would fall on deaf ears. Recognize this is your self-inflicted wound'; and/or 'Fatal Attraction, 1987. Yours was a Fatal Decision'; and/or 'you're clueless as to what events may unfold'; and/or 'surely you'll receive the lesson of a lifetime'; and/or texted information to her that could only have been learned by a person physically present inside her home..."

*Id.*

In addition, Plaintiff attached an affidavit in support of arrest warrant to his Complaint. (*See* Doc. # 4 at 26-27.) The affidavit, sworn by Karen Dustman, Deputy District Attorney, states that "during the course of her employment as such, she received and reviewed investigative reports submitted by the Douglas County Sheriff's Office indicating that the crime of AGGRAVATED STALKING, a violation of Nevada Revised Statute 200.575(2), a category B felony, was committed on or about November 26, 2011, and it appears that such crime is attributed to Michael Charles Meisler." (*Id.*) The affidavit attaches and incorporates by reference the investigative reports. (*Id.*)

Next, Plaintiff attaches the arrest warrant as an exhibit to his Complaint. (*See* Doc. # 4 at 29-30.)

This is followed by yet another exhibit attached to the Complaint which Plaintiff has identified as the report of Chrzanowski. (*See* Doc. # 4 at 6, 32.) This document states that the victim reported that Plaintiff was "terrorizing her through mail, e-mail, text message, phone calls, by showing up at her place of employment, by sending her packages in the mail, and by actually entering her home (twice) without her there, to leave behind letters. [Victim] hsa [sic] kept a record of each and every piece of communication she has received in a binder..." (*Id.*) The report further reveals that on December 15, 2011, the officer believed that Plaintiff was a threat to the victim, as well as other women, and thus contacted his cellular phone provider to ping the current location of his number. (*Id.*)

11

### iii. Conclusion

The court finds that these documents, attached to Plaintiff's Complaint, clearly establish that probable cause existed for Plaintiff's arrest. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (while the court generally cannot consider material beyond the pleadings in ruling on a motion to dismiss without converting it into a motion for summary judgment, the court is permitted to consider exhibits attached to a complaint).

Moreover, to the extent Plaintiff seeks to assert a claim that Deputy District Attorney Dustman wrongfully commenced a criminal prosecution against him, such a claim cannot be pursued. *See Imbler v. Pachtman*, 424 U.S. 409, 410 (1976) (holding that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" was not amenable to suit by former prisoner pursuant to § 1983); *see also Van De Kamp v. Goldstein*, 555 U.S. 335 (2009) (giving examples where absolute immunity has applied, including when prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of an application for a search warrant); *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997) (finding that "drafting of certification...determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court" were functions that were afforded absolute immunity; but also noting that she was not entitled to absolute immunity with respect to plaintiff's claim centered on an allegation that she falsified facts in her certification. (Plaintiff has not made such an allegation here, and thus, the prosecutor is still entitled to absolute immunity.)).

Next, since there is no underlying constitutional violation, Douglas County likewise has no liability. Local government entities "can be sued directly under § 1983...where...the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, liability attaches only where the entity's policies evince "deliberate indifference" to the constitutional right and are the "moving

force behind the constitutional violation." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (internal quotation marks and citation omitted). Because the court has concluded that there was no constitutional injury in connection with Plaintiff's arrest, Plaintiff cannot maintain a § 1983 claim against Douglas County based on his arrest.

Finally, to the extent Plaintiff asserts a supervisory liability claim related to the arrest against defendants Pierini (Douglas County Sheriff), Jackson (Douglas County District Attorney), and Dustman (Douglas County Deputy District Attorney) (*see* Doc. # 4 at ¶¶ 19-26), these claims cannot be maintained in the absence of an underlying constitutional violation. *See Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (supervisory liability appropriate under § 1983 if supervisor was "personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.").

In sum, Plaintiff's claim that his Fourth Amendment rights were violated because the arrest warrant was not supported by probable cause should be dismissed with prejudice.

### 2. Cellular Phone Location Data Utilized to Effectuate Plaintiff's Arrest

#### i. Overview

The court determined above that Plaintiff's own Complaint reveals that probable cause existed to support the issuance of the arrest warrant and his eventual arrest. Now, the court must determine whether Plaintiff states a colorable Fourth Amendment claim in connection with the allegations that his Fourth Amendment rights were violated by the "pinging" of his cellular telephone signal by triangulation without a warrant supported by probable cause or a court order to ascertain Plaintiff's location and effectuate his arrest. (Doc. # 4 at 6 ¶ 18.)

This claim appears to be directed against defendants Chrzanowski, Munoz, Duzan, Vidovich, Sheriff Pierini, and the Douglas County Sheriff's Department. Plaintiff asserts that none of these individuals provided a probable cause affidavit to obtain a warrant to obtain this information, which they then used to locate Plaintiff and effectuate his arrest. (*See* Doc. # 4

at 7-8 ¶¶ 19-20.) The claim against Douglas County Sheriff's Department is based on the allegation that it had notice of the propensity of defendants Chrzanowski, Munoz, Duzan, Vidovich and Pierini to engage in conduct that violates individuals' civil rights. (*Id.* at 8-9 ¶¶ 25-26, 10 ¶ 29.) He further alleges that the Douglas County Sheriff's Department failed to properly train and educate these defendants or to instruct them in the application of constitutional law. (*Id.*)

The court will discuss the reasoning behind its conclusion below, but concludes that for purposes of screening, where the truth of Plaintiff's allegations are accepted, Plaintiff states a colorable claim insofar as he alleges that a court order was not even obtained before this information was disclosed. However, to the extent his Fourth Amendment claim is predicated on the allegation that a warrant was required to obtain this information, Defendants are entitled to qualified immunity.

This claim, if allowed to proceed, will first require the court to confront the issue of what standard must be satisfied to compel the disclosure of prospective or real-time cellular site location information (CSLI).[2] Ultimately, the court may have to determine whether the government must obtain a warrant supported by probable cause to gain access to CSLI or if CSLI is "merely another form of subscriber record accessible upon a showing of 'specific and articulable facts'" under the SCA, 18 U.S.C. § 2703(d). *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747 (S.D. Tex. 2005).

Neither the Supreme Court nor the Ninth Circuit has addressed whether prospective or real-time CSLI is protected by the Fourth Amendment, *i.e.*, whether there is a reasonable expectation of privacy in such information. Even without addressing the Fourth Amendment issue, neither of these courts have addressed, as a matter of statutory construction, whether

---

[2]Historical data, in contrast, is requested from a provider after the fact, by requesting data that has been accumulated by the provider over a specific period of time. It should be noted that there may even be a distinction between "real-time" and "prospective" data because "real-time" data refers to the data as it is being collected and "prospective" data is generally referred to as that which is generated after a court issues an order. So, "prospective" data may include "real-time" data as well as historical data.

a warrant based on probable cause is required to obtain this information or if some lesser showing is sufficient. The decisions of other courts on this issue are not uniform. Some courts have found that this information is obtainable under the "specific and articulable facts" standard of the SCA combined with the "relevant to an ongoing criminal investigation" standard of the pen register/trap and trace provisions. Others have required a warrant based on probable cause. Still others have devised alternative standards. It is worth pointing out that most courts that have addressed the issue and determined that a warrant and probable cause are required have not made the determination under the Fourth Amendment, but instead find that there is no other statutory authority under which to authorize the disclosure of the information.

If Plaintiff had only alleged that the search and seizure of his CSLI was done in the absence of a warrant, even at this early juncture the court would have recommended dismissal of the claim on the basis that Defendants are entitled to qualified immunity because the law in this area is anything but clearly established. *See infra*. However, Plaintiff not only alleges that the search and seizure of CSLI was accomplished without a warrant but that it was obtained *without any court order*. No court to confront this issue (except in the context of an emergency which is statutorily outlined and not presented here) has determined that CSLI can be obtained by the government with something less than a court order. For this reason, the court is recommending that the claim, in this narrow context, be allowed to proceed. Should it turn out that contrary to Plaintiff's allegations, the CSLI was obtained pursuant to a court order, Defendants will likely be successful in asserting qualified immunity over the claim allowed to proceed because it is not clearly established whether a warrant based on probable cause or a court order based on some lesser showing is required to obtain this information.

Nevertheless, given the uncertainty that shrouds this issue, the court will provide the parties and district court with the background which led the court to its conclusion. The court will first discuss the cellular technology as well as the current legal landscape surrounding this issue before proceeding to an analysis of Plaintiff's claim.

### ii. Cellular phone technology

Cell phones operate within a geographic network of cell sites. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 750 (S.D. Tex. 2005) (citation omitted); Electronic Communications Privacy Act Reform and Revolution in Location Based Technologies and Services: Hearing Before the Subcomm. on the Constitution, Civil Rights and Civil Liberties of the H. Comm. on the Judiciary, 111th Cong. 81-85 & n. 14 (2010) (statement of M. Blaze) (hereinafter referred to as 2010 Hearing). When a cell phone is turned on, it engages in scanning for the strongest signal and will register and re-register with a cellular tower as it travels through the network. *Id*. When it does so, the cell phone registers its location information with the network. *See* 2010 Hearing (statement of H. Johnson). "By a process of triangulation from various cell towers, law enforcement is able to track the movements of the target phone, and hence locate a suspect using that phone." *In re Application,* 396 F.Supp.2d at 750.

Depending on the application software being utilized by the cell phone, GPS technology on the phone may also be utilized to determine a location within ten meters. 2010 Hearing (statement of M. Blaze). However, whether or not the GPS location is sent to the network to enable law enforcement to locate a person would depend on whether and how frequently the application is transmitting this information. *Id*. For law enforcement purposes, the network CSLI is more important because the providers continually keep these records. *Id*. As of 2010, the providers' ability to track location information in this manner was approaching the precision of GPS tracking. *Id*. In fact, as of 2010, just having a cell phone turned on enabled the provider to pinpoint the location of the phone within fifty meters or less. *Id*.

As the CSLI is generated it is retained by the providers in "call detail records." *Id*. The providers use it for marketing and business development, *i.e*., to see where they need to add infrastructure. Needless to say, such precise information is also invaluable to law enforcement agencies conducting criminal investigations. *See id*. (statement of Richard Littlehale) ("cell phone location information frequently permits law enforcement an opportunity to find and

16

rescue a victim or apprehend an offender in a matter of hours-whereas other methods may consume many days and may not prove fruitful at all").

To be clear, providers record the CSLI information for every call, but only record the pinpoint location information when specifically requested. However, as the technology becomes cheaper and more widespread, they may retain the pinpoint information voluntarily on a more frequent basis. *See id.* (statement of M. Blaze).

### iii. Statutory framework

The Electronic Communications Privacy Act of 1986 (ECPA) governs law enforcement access to electronic and wireless technology and provides varying standards for acquiring different types of information. Codified, as amended, at 18 U.S.C. §§ 2701-2711. The ECPA does not specifically refer to prospective CSLI.

Title I of the ECPA amended the 1968 federal wiretap statute (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510-2520) to govern electronic communications and governs mobile tracking devices. 18 U.S.C. § 3117.

Title II of the ECPA governs access to stored communications and transaction records and is referred to as the Stored Communications Act (SCA), 18 U.S.C. §§ 2703, *et. seq.* It governs three categories of information: (1) contents of wire or electronic communications in electronic storage; (2) contents of wire or electronic communications in a remote computing service; and (3) subscriber or customer records (not including the contents) concerning electronic communication service or remote computing service. 18 U.S.C. § 2703. To obtain disclosure of the first two categories you basically either have to give notice to the subscriber or customer or obtain a warrant under Rule 41. The third category may be obtained by court order on a showing of "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

Title III of the ECPA governs pen registers and trap/trace devices. 18 U.S.C. §§ 3121-3127. This portion of the ECPA regulates the collection of addressing and other non-content information for wire and electronic communications. *Id.* Addressing information includes the phone numbers dialed from or to a particular telephone (content is the actual conversation between parties to a call) and its counterpart in internet communications. *See id.*; *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (email to and from addresses and IP addresses constitute addressing information). A pen register captures the outgoing addressing information. 18 U.S.C. § 3127(3). A trap/trace device, on the other hand, captures incoming addressing information. 18 U.S.C. § 3127(4). Pursuant to the statute, a government attorney can apply to the court for an order authorizing installation of a pen register and/or trap/trace device if "the information likely to be obtained is relevant to an ongoing criminal investigation." 18 U.S.C. § 3122(b)(2). A provider's good faith reliance on such an order provides a complete defense to any civil or criminal action arising from its issuance in accordance with the order. 18 U.S.C. § 3124(d), (e). An emergency situation may justify the installation and use of pen registers and/or trap/trace devices in the absence of a court order, but a court order must be sought within forty-eight hours. 18 U.S.C. § 3125(a), (c).

In 1994, Congress enacted the Communications Assistance to Law Enforcement Act of 1994 (CALEA). It provides, in pertinent part:

> [A] telecommunications carrier shall ensure that its equipment, facilities, or services that provide a customer or subscriber with the ability to originate, terminate, or direct communications are capable of--
> ...
> (2) expeditiously isolating and enabling the government, pursuant to a court order or other lawful authorization, to access call-identifying information that is reasonably available to the carrier--
> (A) before, during, or immediately after the transmission of a wire or electronic communication (or at such later time as may be acceptable to the government); and
> (B) in a manner that allows it to be associated with the communication to which it pertains, except that, with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of Title 18), such call-identifying information shall not include any information that may disclose the physical location of the subscriber (except to the extent that the location may be determined from the telephone number);

47 U.S.C. § 1002(a)(2).

18

1   This statute states that a person's location information cannot be acquired solely

2   pursuant to a pen register. 47 U.S.C. § 1002(a)(2). Therefore, it is fairly well established that

3   some additional authority other than the pen register statute requiring only relevance to an

4   ongoing criminal investigation is required to obtain prospective CSLI.

5   **iv. Search and Seizure under the Fourth Amendment**

6   The Fourth Amendment protects individuals from unreasonable searches and seizures

7   and provides that no warrants shall issue, except upon probable cause. U.S. Const. amend. IV.

8   "[A] Fourth Amendment search occurs when the government violates a subjective expectation

9   of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001)

10  (citing *Katz v. United States*, 389 U.S. 347 (1967) (Harlan, J., concurring)).

11  **v. Law enforcement approach**

12  Law enforcement has approached obtaining prospective CSLI by "combi[ning] the

13  authority of a pen/trap order [requiring a showing that the information is relevant to an

14  ongoing criminal investigation] with the historical request for data under Section 2703(d)"

15  which requires a showing that there are "specific and articulable facts" that the "records or

16  other information sought, are relevant and material to an ongoing criminal investigation."

17  2010 Hearing (statement of Hon. S. Smith).  The rationale behind this combined approach is

18  that the CSLI is "dialing, routing, addressing, or signaling information" and under 18 U.S.C.

19  § 3121(a), the government must obtain a pen register and/or trap/trace device order to acquire

20  the information. *Id*. However, according to CALEA, this is not enough, and some other

21  authority must be required to obtain prospective CSLI. Therefore, law enforcement cites

22  § 2703(d) as the other authority because it provides for the use of a court order to obtain "non-

23  content information" pertaining to a customer or subscriber of an electronic communication

24  service. *See id*.; *see also* 2009 Version of the Manual for Searching and Seizing Computers and

25  Obtaining Electronic Evidence, pp. 159-160, available at

26  http://www.justice.gov/criminal/cybercrime/docs/ssmanual2009.pdf, last visited May 7,

27  2013.

28

1      As will be discussed below, courts are split as to whether this hybrid approach is

2  sufficient.

3  **vi. Decisional law**

4      As indicated above, neither the United States Supreme Court nor the Ninth Circuit have

5  squarely addressed this issue. The Supreme Court did recently determine that the placement

6  of a GPS device on a motor vehicle and use of that device to monitor its movement on public

7  streets constituted a search which violated the Fourth Amendment. *United States v. Jones*,

8  132 S.Ct. 945 (2012). In that case, the majority opinion focused on the trespassory nature of

9  the intrusion, and not on whether Jones had a reasonable expectation of privacy. *See id*. at

10  949-50 ("The Government physically occupied private property for the purpose of obtaining

11  information."). *Jones* did not address, nor did it provide any guidance regarding other

12  electronic modes of surveillance. *See id*. at 955 (Sotomayor, J., concurring) ("[T]he majority

13  opinion's trespassory test" provides little guidance on "cases of electronic or other novel

14  modes of surveillance that do not depend upon a physical invasion on property."). It did

15  confirm, however, that cases involving "merely the transmission of electronic signals without

16  trespass would *remain* subject to the *Katz* [reasonable expectation of privacy] analysis." *Id*.

17  at 953 (emphasis original). Thus, the Supreme Court has left it to the circuits to determine

18  whether there is a reasonable expectation of privacy in electronic data that identifies a person's

19  location, which is a prerequisite to the determination of whether a warrant or court order

20  based on some lesser showing is required to access this data.

21      The Third Circuit, while not making a determination on applicability of the Fourth

22  Amendment, held that magistrate judges have discretion to impose a warrant requirement on

23  agents seeking *historical* cell site data, or may permit agents to satisfy a statutory standard

24  less demanding than the probable cause standard. *See In re Application of the U.S. for an*

25  *Order Directing a Provider of Elec. Communication Service to Disclose Records to the Gov't*,

26  620 F.3d 304, 305-06, 319 (3d. Cir. 2010).

27

28

20

The Sixth Circuit recently held that an individual "did not have a reasonable expectation of privacy in the data given off by his voluntarily procured pay-as-you-go cell phone." *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir. 2012), *pet. for cert. filed* Dec. 26, 2012. In that case, the phones were equipped with GPS tracking technology. *Id*. at 775. The government obtained an unspecified court order, but not a warrant, to obtain the data, and the decision arose from the criminal defendant's motion to suppress. *Id*. The order authorized the cellular telephone company to release information including "subscriber information, cell site information, GPS real-time location, and 'ping' data" for the phone in question to learn the location of suspected drug traffickers. *Id*. at 776.

With respect to lower courts in the circuits, the decisions run the gamut. Some courts have adopted the hybrid approach of law enforcement. *See, e.g., In re Application of United States*, 632 F.Supp.2d 202 (E.D.N.Y. 2008); *In re Application of the United States*, 460 F.Supp.2d 448, 462 (S.D.N.Y. 2006); *In re Application of the United States*, 433 F.Supp.2d 804, 806 (S.D. Tex. 2006); *In re Application of the United States*, 411 F.Supp.2d 678 (W.D. La. 2006)*; In re Application of the United States,* 405 F.Supp.2d 435 (S.D.N.Y. 2005).

Other courts have rejected the hybrid approach. *See, e.g., In re Application of the United States*, 416 F.Supp.2d 390, 396-97 (D. Md. 2006); *In re Application of the United States*, 396 F.Supp.2d 294 (E.D.N.Y. 2005); *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 759-65 (S.D. Tex. 2005) (rejecting hybrid theory and finding that "there is no reason to treat cell phone tracking differently from other forms of tracking under 18 U.S.C. § 3117, which routinely require probable cause").

When courts reject the hybrid order, they generally require a warrant based on probable cause to obtain prospective CSLI. *See, e.g., In re Application for Pen Register*, 396 F.Supp.2d at 759-61. However, as stated above, these courts have generally not found that a warrant is constitutionally required under the Fourth Amendment, but instead make the determination as a matter of statutory construction. *See, e.g., In re Application of the United States*, 396

21

1    F.Supp.2d at 322; *In re Application for Pen Register*, 396 F.Supp.2d at 759-60; *see also In re*

2    *Application of the United States*, 733 F.Supp.2d 939 (N.D. Ill. 2009); *In re Application of the*

3    *United States*, 2009 WL 159187 (S.D.N.Y. Jan. 13, 2009); *In re Application of the United*

4    *States*, 497 F.Supp.2d 301 (D.P.R. 2007); *In re Application for an Order*, 439 F.Supp.2d 456

5    (D.Md. 2006); *In re Application of the United States*, 412 F.Supp.2d 947 (E.D. Wis. 2006);

6    *In re Application of the United States,* 415 F.Supp.2d 211 (W.D.N.Y. 2006); *In re Application*

7    *of the United States*, 407 F.Supp.2d 134 (D.D.C. 2006); *In re Application of the United States*,

8    416 F.Supp.2d 390 (D.Md. 2006); *In re Application of the United States*, 441 F.Supp.2d 816

9    (S.D. Tex. 2006); *In re Application of the United States*, No. 06-MISC-004, 2006 WL 2871743

10   (E.D. Wis. Oct. 6, 2006); *In re Application of the United States*, Nos. 1:06-MC-6, 1:06-MC-7,

11   2006 WL 1876847 (N.D. Ind. July 5, 2006); *In re Application of the United States*, No. 06

12   CRIM. MISC. 01, 2006 WL 468300 (S.D.N.Y. Feb. 28, 2006); *In re Application for Pen*

13   *Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747 (S.D.

14   Tex. 2005); *In re Application of the United States*, 396 F.Supp.2d 294 (E.D.N.Y. 2005); *In re*

15   *Application of the United States*, 407 F.SUpp.2d 132 (D.D.C. 2005); *In re Application of the*

16   *United States*, 402 F.Supp.2d 597 (D.Md. 2005); *In re Application of the United States*, 384

17   F.Supp.2d 562 (E.D.N.Y. 2005); *In re Applications of the United States*, Nos. 05-403, 05-404,

18   05-407, 05-408, 05-409, 05-410, 05-411, 2005 WL 3658531 (D.D.C. Oct. 26, 2005).

19        The results are no more clear within the Ninth Circuit. *See U.S. v. Davis*, Crim. No. 10-

20   339-HA, 2011 WL 2036463, at *4 (D. Or. May 24, 2011) (declining to reach the constitutional

21   question but noting a debate exists among the courts); *United States v. Velasquez*, No. CR 08-

22   0730 WHA, 2010 WL 4286276, at * 5 (N.D. Cal. Oct. 22, 2010) (in ruling on motion to

23   suppress the court found no reasonable expectation of privacy because "cell phones are

24   voluntarily carried by their users and may be turned on or off at will") (but note that this

25   analysis was based on the Ninth Circuit's ruling in *United States v. Pineda Moreno*, 591 F.3d

26   1212, 1217 (9th Cir. 2010), which did not specifically apply to cellular location data and was

27   abrogated by the Supreme Court's opinion in *United States v. Jones,* 132 S.Ct. 1533 (2011),

28

and in any event, a warrant for the location data was issued based on probable cause in that case).

In *U.S. v. Ruby*, No. 12CR1073 WQH, 2013 WL 544888 (S.D. Cal. Feb. 12, 2013), the court addressed a motion to suppress evidence acquired pursuant to an order for disclosure of historic cell site information under section 2703(d) of the SCA. The magistrate judge found that "specific and articulable facts" existed to establish that the information sought was "relevant and material to a criminal investigation." *Id*. at *4. The cell site information for the subject phones for a period of three months was ordered to be disclosed by the provider. *Id*. In the motion to suppress, the criminal defendant argued that this violated his Fourth Amendment rights because it amounted to the government tracking his movement for a prolonged period of time without a warrant supported by probable cause. *Id*. The court determined that section 2703(c)(1)(B) of the SCA applied to the request for historical cellular location data. *Id*. at * 5 (citations omitted). In addition, the court found that the application contained the requisite "specific and articulable facts showing that there are reasonable grounds to believe that the records sought are relevant and material to an ongoing criminal investigation." *Id*. The court therefore found that the government properly sought the required judicial review for the disclosure sought. *Id*.

Nevertheless, the court went on to analyze the Fourth Amendment issue. *Id*. at 5-6. After discussing *United States v. Miller*, 425 U.S. 435 (1976) (finding no reasonable expectation of privacy where a person's bank records were provided by banks pursuant to subpoena) and *Smith v. Maryland*, 442 U.S. 735 (1979) (finding no reasonable expectation of privacy in numbers dialed from phone and "no legitimate expectation of privacy in information...voluntarily turn[ed] over to third parties"), the court noted that the *historic* location data was "created and maintained by the cellular provider" and "reveal[ed] which cellular towers were used to route a particular call... [which in turn] can reveal the general vicinity in which a cellular phone was used." *Id*. at * 6. The court found that "these were business records of the provider and were not entitled to protection under the Fourth

1   Amendment" under *Miller*. *Id*. The court reasoned that the criminal defendant had voluntarily

2   conveyed this information to the provider, and therefore, had no reasonable expectation of

3   privacy in the records. It also concluded that the request was reasonable in duration because

4   it directly correlated to the period of criminal activity under investigation. *Id*.

5        In the absence of legislative guidance, courts continue to wrangle with the appropriate

6   course of action. *See* 2010 Hearing (statement of Hon. S. Smith) ("For nearly a quarter-

7   century, magistrate judges have been issuing tens of thousands of these orders under a

8   fiendishly complex statute without any substantial guidance from a higher court.") This is

9   compounded, as Magistrate Judge Smith accurately pointed out, by the secrecy with which this

10   data is obtained. *Id*. While it would appear from the cases cited above that a majority have

11   rejected the hybrid approach in favor of requiring a warrant based on probable cause, it is

12   difficult to discern whether that is a reality because it seems likely that a large number of

13   judges do not issue published orders in connection with applications for prospective CSLI.

14   Moreover, if a court adopts the hybrid approach, such orders are sealed and gag orders are

15   entered under the pen register and trap/trace device statute. When an ordinary search warrant

16   is obtained pursuant to Federal Rule of Criminal Procedure 41, the party who is subject to the

17   search receives notice, and typically, the warrant and supporting affidavits are not sealed. The

18   ECPA, on the other hand, contains provisions for gag orders and permanently sealed records.

19   (Pen register orders must be sealed and provide for a gag order. While the SCA does not

20   require 2703(d) orders to be sealed, it allows for "preclusion of notice" if there is reason to

21   believe the investigation would be jeopardized.) That is not to say there are not sound reasons

22   for the secrecy provisions, but this has likely contributed to the lack of guidance from higher

23   courts on this issue.

24   ///

25   ///

26   ///

27   ///

28

### vii. Defendants are entitled to qualified immunity to the extent Plaintiff's claim is based on the alleged failure to obtain a warrant based on probable cause

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013)(citation omitted) ("Qualified immunity protects government officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*");Padilla v. Yoo*, 678 F.3d 748, 758 (9th Cir. 2012).

"Whether qualified immunity applies thus 'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Chappell*, 706 F.3d at 1056 (quoting *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012)). In other words, a "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S.Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Padilla,* 678 F.3d at 758 (citation omitted).

"[A] case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and courts are "not to define clearly established law at a high level of generality[.]" *Id.* at 2084-85; *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

"Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v.  Hunter*, 2012 WL 89157, at * 1 (citing *Center for Bio-Ethical Reform, Inc.  v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 794-95 (9th Cir.  2008)); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir.  1993)). Plaintiff specifically states that this is an action for damages (Doc. # 4 at 1 ¶ 1) and does not request injunctive relief. (*See* Doc. # 4.)

28 U.S.C. § 1915A allows the court to *sua sponte* dismiss an action that seeks monetary relief against a defendant who is immune from such relief. *See also Mitchell v.  Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").

After surveying the cases that have confronted this issue above, it goes without saying that the law with respect to whether a warrant based on probable cause or court order based on some lesser showing is required to obtain disclosure of prospective CSLI is not clearly established.

Therefore, to the extent Plaintiff's claim relies on the absence of a warrant supported by probable cause, this claim should be dismissed as Defendants are entitled to qualified immunity.

### viii. Claim based on absence of a court order may proceed

No court that has addressed this issue has found that prospective CSLI may be obtained without at least a court order. Accordingly, accepting as true Plaintiff's allegation that the prospective CSLI was obtained without even a court order, the court concludes that this claim may proceed.

### d. Fourteenth Amendment Due Process

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

The Supreme Court has held that a violation of the Fourth Amendment by state authorities constitutes a Fourteenth Amendment due process violation. *See Mapp v. Ohio*, 367 U.S. 643 (1961); *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

To the extent his due process claim is premised on an arrest without probable cause and on the disclosure of CSLI without a warrant, this claim should be dismissed with prejudice.

However, insofar as Plaintiff is asserting a due process claim in connection with the alleged Fourth Amendment violation centered on the disclosure of CSLI unsupported by even a court order, this claim should be allowed to proceed.

### e. Fourteenth Amendment Equal Protection

The Fourteenth Amendment prohibits denial of "the equal protection of the laws." U.S. Const.  amend XIV, § 1. The Equal Protection Clause requires the State to treat similarly situated people equally. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff has not included allegations giving rise to an equal protection claim. Nor is the court convinced that Plaintiff could include additional allegations in connection with what he has already alleged that could potentially give rise to such a claim. *See Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (citation omitted) (leave to amend must be given unless the court "determines that the pleading could not possibly be cured by the allegation of other facts."). Therefore, this claim should be dismissed with prejudice.

### f. Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend VIII. Plaintiff has not included allegations giving rise to an Eighth Amendment claim; therefore, this claim should be dismissed with prejudice.

### 2. State Law Claims

The state law claims asserted by Plaintiff include: false arrest, false imprisonment, malicious prosecution, abuse of process, negligence, breach of contract, as well as violations of Article I §§ 8(5) and 18 of the Nevada Constitution.

///

27

### a. False Arrest and False Imprisonment

In Nevada, the tort of false arrest is said to be an "integral part" of the tort of false imprisonment. *See Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (citation and internal quotation marks omitted). Thus, the two are generally analyzed together. False imprisonment is defined as "a restraint of liberty without any sufficient cause or legal authority." *See Lerner Shops v. Marin*, 423 P.2d 398, 400 (1967); *see also Hernandez*, 634 P.2d at 671 (citation omitted). The court has determined that Plaintiff's claim that there was not probable cause to support his arrest is belied by the attachments to his Complaint.

Moreover, to the extent he seeks to hold a deputy sheriff liable for effectuating his arrest, the deputy sheriff is not liable for false arrest or false imprisonment when acting pursuant to a warrant valid on its face. *See Nelson v. City of Las Vegas*, 665 P.2d 1141, 1143-44 (Nev. 1983) (citations omitted). Plaintiff has attached the arrest warrant to his complaint which appears to be valid on its face.

Therefore, Plaintiff's claims of false arrest and false imprisonment should be dismissed with prejudice.

### b. Malicious Prosecution and Abuse of Process

The elements of a malicious prosecution claim in Nevada are: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (internal quotation marks and citation omitted).

The elements of an abuse of process claim in Nevada are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Id.* (internal quotation marks and citation omitted). An abuse of process claim can arise from civil and criminal proceedings. *Id.*

Plaintiff directs these claims to defendants Chrzanowski, Munoz, Duzan, Vidovich, Pierini, Jackson, Dustman, and Douglas County. (*See* Doc. # 4 at 12 ¶ 36.) Plaintiff's malicious

28

prosecution claim should not proceed because it is belied by the attachments to his Complaint which contain probable cause for initiating the criminal proceeding.

While Plaintiff includes reference to an abuse of process claim in his Complaint, he does not allege what ulterior purpose each of these defendants had in initiating the criminal proceeding against Plaintiff. Consequently, this claim should be dismissed; however, because Plaintiff could possibly cure the deficiencies with respect to his abuse of process claim, the dismissal should be without prejudice, except as to defendants Jackson and Dustman, who are entitled to prosecutorial immunity.

### c. Breach of Contract

Plaintiff has asserted a breach of contract claim against Sprint-Nextel, Inc., that is based on its disclosure of the CSLI. (Doc. # 4 at 19-21 ¶¶ 59-62.)

To state a claim for breach of contract in Nevada, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or excuse from performance by the plaintiff; (3) breach by the defendant; and (4) damage. *See e.g., Village Pointe, LLC v. Resort Funding, LLC*, No. 56026, 2011 WL 5844289, at * 3 (Nov. 18, 2011) (unpublished disposition) (citing *Richardson v. Jones*, 1 Nev. 405, 408 (1965)).

Plaintiff alleges that he entered into a valid contract with Sprint-Nextel, Inc., for the provision of cellular telephone services, that he performed his end of the bargain, that defendant breached the contract by disclosing his CSLI, and that he was damaged. Taking these allegations as true, Plaintiff should be permitted to proceed with this claim. As indicated above, if it is ultimately established that this information was obtained pursuant to the SCA, Plaintiff may not be able to maintain this claim against Sprint-Nextel, Inc., but the court cannot make this conclusion from the face of the Complaint. Therefore, at this juncture he states a colorable breach of contract claim against Sprint-Nextel, Inc.

### d. Negligence

Negligence requires allegations that: (1) defendant owed a duty of care to plaintiff;

1    (2) defendant breached the duty; (3) the breach was the legal cause of the plaintiff's injuries;

2    and (4) plaintiff suffered damage. *Scialabba v. Brandise Const. Co.*, 921 P.2d 928 (1996).

3           Plaintiff's Complaint does not make clear to whom the negligence claim is directed. Nor

4    is it clear what allegations Plaintiff relies on to form the basis of his negligence claim. As a

5    result, Plaintiff's negligence claim should be dismissed without prejudice. Any amendment

6    should make clear what allegations form the basis of his claim and to whom the claim is

7    directed.

8           As an aside, Nevada Revised Statute 41.130, cited by Plaintiff, contains Nevada's general

9    waiver of sovereign immunity from suits arising from acts of negligence committed by state

10   employees. *See Butler ex rel. Biller v. Bayer*, 168 P.3d 1055 (2007).

11          While Nevada has generally waived its immunity from liability in Nevada Revised

12   Statute 41.031, it has retained immunity as provided in Nevada Revised Statute 41.032 to

13   41.038, 485.318(3), and any other statute that expressly provides for government immunity.

14   Nevada Revised Statute 41.032(2) provides for discretionary immunity.

15          Nevada Revised Statute 41.032(2) provides in pertinent part:

16          No action may be brought under NRS 41.031 or against an immune contractor
            or an officer or employee of the State or any of its agencies or political
17          subdivisions which is:
            ...
18          2. Based upon the exercise or performance of the failure to exercise or perform
            a discretionary function or duty on the part of the State or any of its agencies or
19          political subdivisions or of any officer, employee or immune contractor of any
            of these, whether or not the discretion involved is abused.
20   Nev. Rev. Stat. 41.032(2).

21          This district has expressly found that the Nevada Supreme Court "has implicitly

22   assumed that municipalities are political subdivisions of the State for the purposes of applying

23   the discretionary act immunity statute." *Sandoval v. Las Vegas Met. Police Dept.*, No. 2:10-

24   cv-1196-RCJ-PAL, 2012 WL 607283, at *13 (D. Nev. Feb. 24, 2012) (citing *Travelers Hotel,*

25   *Ltd. v. City of Reno*, 103 Nev. 343, 741 P.2d 1353, 1354-55 (1987)). In Nevada, discretionary-

26   function immunity applies if a decision: "(1) involves an element of individual judgment or

27   choice and (2) is based on considerations of social, economic, or political policy." *Id*. at *14

28

                                                    30

(citing *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720, 727, 729 (2007)). In addition, "[t]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive." *Id.* (quoting *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000)).

The court cannot make a determination on screening as to discretionary immunity because its application is not clearly established from the allegations in the Complaint. Therefore, in conclusion, Plaintiff's negligence claim should be dismissed with leave to amend, but Plaintiff should be aware of the potential application of discretionary function immunity.

### e. Conspiracy

To state a claim for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff, and (2) the plaintiff sustained damage as a result. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citation omitted).

Plaintiff alleges that Tebo and Sperry conspired to have Plaintiff arrested and incarcerated, and was injured when their plan came to fruition. Taking these allegations as true, Plaintiff states a colorable conspiracy claim against defendants Tebo and Sperry, and this claim should be allowed to proceed. As indicated above, to the extent Plaintiff seeks to include defendant Chrzanowski in his federal or state law claims for conspiracy, he has not sufficiently alleged these claims, and should be permitted leave to amend in this regard.

### f. Article I §§ 8(5) and 18 of the Nevada Constitution

Article I § 18 of the Nevada Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized." This is Nevada's counterpart to the Fourth Amendment of the United States Constitution. However, "states are free to interpret their own

1   constitutional provision as providing greater protections than analogous federal provisions."

2   *State v. Bayard*, 71 P.3d 498, 502 (Nev. 2003). Therefore, a search and seizure may violate

3   Article I § 18 of the Nevada Constitution even though it is constitutional under the Fourth

4   Amendment. *Id.*

5          To the extent Plaintiff asserts a violation of Article I § 18 of the Nevada Constitution

6   based on the alleged failure of Dustman to comply with Nevada's warrant requirements, the

7   court finds Plaintiff cannot proceed with his claim because a district attorney is immune from

8   suit for damages arising out of the performance of the criminal prosecutorial function. *See*

9   *County of Washoe v. District Court*, 652 P.2d 1175, 1176 (1982).

10         However, to the extent Plaintiff's claim under the Nevada Constitution is predicated on

11  his allegation that a court order was not obtained to access the prospective CSLI, this claim

12  should be allowed to proceed. Plaintiff states no other claims under Article I § 18 of the

13  Nevada Constitution.

14         Article I § 8(5) of the Nevada Constitution provides that "[n]o person shall be

15  deprived of life, liberty, or property, without due process of law." As with his federal due

16  process claim, Plaintiff should be allowed to proceed with his due process claim under the

17  Nevada Constitution to the extent it is based on his allegation that no court order was

18  obtained to access the prospective CSLI.

19                              **II. MOTION TO CLARIFY**

20         The court will now address Plaintiff's Motion to Clarify the Minute Order of

21  November 26, 2012 and for Other Relief. (Doc. # 8.)

22         In his motion, Plaintiff recites a variety of matters that are not related to his action,

23  but the only relief requested is an order expediting service of process as well as an order

24  that the Clerk's office hold on to his documents until they can be retrieved by his domestic

25  partner. (Doc. # 8.)

26         To the extent Plaintiff's motion seeks an order expediting service of process, the

27  motion should be denied as moot. The court will address issuance of the summons below.

28

In addition, to the extent Plaintiff is asking the Clerk to serve documents on someone other than Plaintiff, that request should also be denied. The court should continue to serve documents on Plaintiff at his address of record.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT** the District Judge enter an order as follows:

(1) **DENYING** his Motion to Clarify (Doc. # 8);

(2) **DISMISSING WITH PREJUDICE** the following:

(a) Defendant Sprint-Nextel, Inc. insofar as it is named as a defendant with respect to Plaintiff's federal claims;

(b) Plaintiff's claims under the Fourth Amendment of the United States Constitution and under Article I, section 8(5) of the Nevada Constitution insofar as they are predicated on the allegation that the warrant for his arrest was not supported by probable cause;

(c) Plaintiff's claims under the Fourth Amendment of the United States Constitution and under Article I, section 8(5) of the Nevada Constitution insofar as they are predicated on the allegation that his prospective CSLI was obtained without a warrant supported by probable cause;

(d) Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article I, section 18 of the Nevada Constitution insofar as they are predicated on the allegations that the warrant for his arrest was not supported by probable cause and his prospective CSLI was obtained without a warrant supported by probable cause;

(e) Plaintiff's claim that his rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution were violated;

(f) Plaintiff's claim that his rights under the Eighth Amendment were violated;

33

(g) Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution;

(h) Plaintiff's state law claim for abuse of process against defendants Jackson and Dustman;

(3) **DISMISSING WITHOUT PREJUDICE:**

(a) Plaintiff's federal Fourth Amendment claim related to obtaining his prospective CSLI insofar as it is predicated on an allegation of a conspiracy between defendants Tebo, Sperry and Chrzanowski;

(b) Plaintiff's state law conspiracy claim as to defendant Chrzanowski;

(c) Plaintiff's state law negligence claim; and

(d) Plaintiff's state law abuse of process claim against defendants Chrzanowski, Munoz, Duzan, Vidovich, Pierini, and Douglas County Sheriff's Department.

(4) **ALLOWING THE FOLLOWING CLAIMS TO PROCEED**:

(a) Plaintiff's claims against defendants Chrzanowski, Munoz, Duzan, Vidovich, Pierini and the Douglas County Sheriff's Department under the Fourth Amendment to the United States Constitution and under Article I, section 8(5) of the Nevada Constitution insofar as they are predicated on Plaintiff's allegation that his prospective CSLI was obtained in the absence of a court order;

(b) Plaintiff's claims against defendants Chrzanowski, Munoz, Duzan, Vidovich, Pierini and the Douglas County Sheriff's Department under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and under Article I, section 18 of the Nevada Constitution insofar as they are predicated on Plaintiff's allegation that his prospective CSLI was obtained in the absence of a court order;

(c)      Plaintiff's state law breach of contract claim against defendant Sprint-Nextel, Inc.;

(d) Plaintiff's state law conspiracy claim against defendants Tebo and Sperry.

34

(4) Should the District Judge enter an order adopting this Report and Recommendation, Plaintiff should be given thirty days from the date of the order adopting the Report and Recommendation to file an amended pleading, remedying, if possible, the defects explained above. Plaintiff should be advised that pursuant to Local Rule 15-1, if he chooses to file an amended complaint, it shall be complete in and of itself without reference to any previous complaint. Any allegations, parties or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Plaintiff should be cautioned that if he fails to file an amended complaint within the time period specified above, the case will proceed as designated above. Plaintiff should clearly title the amended complaint as such by placing the words "FIRST AMENDED COMPLAINT" on page 1 in the caption.

(5) Should the District Judge adopt this Report and Recommendation, upon expiration of the period of time given for Plaintiff to file an amended complaint, the District Judge should order the Clerk to issue the summonses to the remaining defendants. After the summonses are issued, it is incumbent upon Plaintiff to serve the defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.

///
///
///
///
///
///
///
///
///
///
///

Plaintiff should be aware of the following:

1.      That he may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED:   May 8, 2013.


_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE